FILED
CLERK, U.S. DISTRICT COURT

10/7/2022

CENTRAL DISTRICT OF CALIFORNIA
BY:  _____ VAV _____ DEPUTY

STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8452/4443
     Facsimile: (213) 894-0141
     E-mail:    thomas.rybarczyk@usdoj.gov
                lindsey.dotson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

           Plaintiff,

                v.

GABRIEL CHAVEZ,

           Defendant.

No. CR  2:22-cr-00462-MWF

PLEA AGREEMENT FOR DEFENDANT
GABRIEL CHAVEZ

     1.   This constitutes the plea agreement between GABRIEL CHAVEZ ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in connection with an investigation of the matter described herein.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

///

///

///

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with aiding and abetting Federal Program Bribery, in violation of 18 U.S.C. §§ 666(a)(2), (2)(a).

b.    Not contest the Factual Basis agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.    Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation, Internal Revenue Service - Criminal Investigation, and, as directed by the USAO, any other

2

federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a. Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b. Attend all meetings, grand jury sessions, trials, or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c. Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreements previously entered into by the parties dated November 11, 2020 and June 14, 2021 (the "Letter Agreements") and in his meetings with the government on November 11, 2020 and June 14, 2021; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to Factual Basis in this agreement.

THE USAO'S OBLIGATIONS

5. The USAO agrees to:

a. Not contest the Factual Basis agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

3

        c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

        d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range.

    6.   The USAO further agrees:

        a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

        b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable Sentencing Guidelines range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to

the Court that Cooperation Information not be used in determining the applicable Sentencing Guidelines range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding Sentencing Guidelines range below that otherwise dictated by the Sentencing Guidelines, and to recommend a term of imprisonment within this reduced range.

                    DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

7.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory

5

authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced Sentencing Guidelines range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.   The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

NATURE OF THE OFFENSE

8.   Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, Federal Program Bribery in violation of 18 U.S.C. § 666(a)(2), he must have committed the crime of Federal Program Bribery and/or aided and abetted in its commission.

9.   For defendant to have committed the crime of Federal Program Bribery in violation of 18 U.S.C. § 666(a)(2), the following must be true:

a.   Defendant corruptly gave, offered, or agreed to give something of value to a person;

b.   Defendant intended to influence or reward an agent of a local government -- here, the City of Baldwin Park -- in connection with any business, transaction, or series of transactions of that local government involving anything of value of $5,000 or more; and

c.   The City of Baldwin Park received, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

10.  For defendant to have aided and abetted in the commission of Federal Program Bribery in violation of 18 U.S.C. § 666(a)(2), the following must be true:

a.   Someone else committed Federal Program Bribery;

b.   Defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of Federal Program Bribery;

c.   Defendant acted with the intent to facilitate Federal Program Bribery; and

d.   Defendant acted before the crime was completed.

<u>PENALTIES</u>

11.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 666(a)(2) is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant

8

fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

**A.   Background**

The City of Baldwin Park, California (the "City") is a local government within the County of Los Angeles.  The City received in excess of $10,000 under a Federal program for each of the calendar years 2017 and 2018.

Ricardo Pacheco ("Pacheco") was elected to the City Council for the City of Baldwin Park (the "City") in 1997 and held that position until in or around June 2020.  He also served as the City's Mayor Pro Tempore from in or around December 2017 to December 2018.  In both roles, he was as an agent of the City.

Defendant founded Market Share Media Agency, an internet marketing company, in 2012.

Person 1[1] has served as the Baldwin Park City Attorney since in or around December 2013.

Person 14 has been the City Manager for the City of Commerce since in or around November 2017.  Prior to that, he was the City Manager for Huntington Park and a Member of the Montebello Unified School District Board.  He is the Chief Executive Officer of Consulting Company 3.

**B.   The Marijuana Company 3 and Marijuana Company 4 Bribery Schemes**

1.   Overview of the Schemes

In or around June 2017, the City started the process of permitting the sale, cultivation, and manufacture of marijuana within the City's limits.  Around that same time, Pacheco decided to corruptly solicit bribe payments from companies seeking marijuana development agreements and related permits ("marijuana permits") in the City.  In exchange for the payments, Pacheco would agree to assist and assist the companies, using his official City position, with obtaining marijuana permits.

Pacheco elected to use an intermediary to funnel the bribe payments to himself in an effort to disguise the true nature of the payments.  The scheme would operate as follows: a company seeking a marijuana permit would pay the intermediary for supposed "consulting" services, the intermediary would then split a portion of the money with Pacheco, and Pacheco would then vote in favor of the company's desired marijuana permit in exchange for the payment.  Pacheco would also agree to use his influence as a City Council member to ensure

---

[1] A legend detailing the names of the masked persons and companies is attached hereto as Exhibit B.

10

1  that other members of the City Council voted in favor of the
2  marijuana permit as well.

3      Defendant was asked by Pacheco to act as an intermediary to
4  funnel bribes to Pacheco, and defendant agreed.  To help conceal the
5  bribery scheme, defendant obtained a template for a sham consulting
6  agreement from Person 1, which defendant thereafter used to
7  facilitate and disguise the scheme.  Defendant used his company,
8  Market Share Media Agency, to funnel bribe payments to Pacheco from
9  two companies, Marijuana Company 3 and Marijuana Company 4.  Both
10 companies hired defendant to help them obtain marijuana permits, but
11 rather than perform legitimate consulting services, defendant
12 primarily funneled bribe payments to Pacheco in order to ensure that
13 Pacheco and the City Council voted in favor of both companies'
14 marijuana permits.  Defendant used the template for the sham
15 consulting agreement provided by Person 1 for the contracts with
16 Marijuana Company 3 and Consulting Company 3, which represented
17 Marijuana Company 4.

18     From approximately August 2017 to at least March 2018, defendant
19 received at least $125,000 from Marijuana Company 3 and at least
20 $45,000 from Consulting Company 3 on behalf of Marijuana Company 4,
21 none of which he reported to the Internal Revenue Service as personal
22 income or as revenue for Market Share Media Agency.  Defendant then
23 paid Pacheco between $80,000 and $93,000 in cash, out of the at least
24 $170,000 collected from both companies.  Per defendant's agreement
25 with Pacheco, the cash payments were in exchange for Pacheco's votes
26 on the two companies' marijuana permits and Pacheco's help securing
27 the necessary votes from other members of the City Council.
28 Defendant and Pacheco agreed that Pacheco would get 60 percent from

the Marijuana Company 3 and Consulting Company 3/Marijuana Company 4 contracts and that defendant could retain the rest as payment primarily for facilitating the bribes.

On multiple occasions, defendant used coded language in text messages to tell Pacheco that he had cash bribes to pass to Pacheco. Specifically, defendant used the word "documents" to mean cash.  For example, on January 9, 2018, defendant sent Pacheco a text message stating "I'm planning to bring all the documents . . ." by which defendant meant he planned to bring Pacheco cash bribes.

To keep track of the cash bribes to Pacheco, defendant used a draft email with the subject line "Dodge Truck" to keep a running tally of the cash provided to Pacheco.  One draft indicated defendant had provided Pacheco $80,080 in cash as of February 27, 2018, including $12,000 on or around February 5, 2018 and $13,000 on or around February 27, 2018.  Defendant provided Pacheco even more cash than was accounted for on this running email tally.

Pacheco performed his end of the bargain, voting in favor of the Marijuana Company 3 and Marijuana Company 4's marijuana permits. First, on December 13, 2017, Pacheco voted in favor of conditional marijuana permits for Marijuana Company 3 and Marijuana Company 4, and the City Council approved conditional marijuana permits for both companies.  Second, on May 2, 2018, Pacheco voted in favor of both companies' marijuana permits again, and the City Council approved their applications by a 3-0 vote.

2.   The Marijuana Company 3 Permit

With respect to the Marijuana Company 3 permit, in and around June 2017, Pacheco arranged a meeting between defendant and Person 15, an attorney assisting Marijuana Company 3 in its pursuit of a

12

marijuana permit.  Before doing so, Pacheco had encouraged defendant -- who had never worked as a consultant -- to assist two companies seeking marijuana permits in Baldwin Park, one of which was Marijuana Company 3.  After meeting with Person 15 in June 2017, defendant met with Person 15 and Marijuana Company 3's owners, Person 16 and Person 17.  During this meeting, defendant learned that the amount of the consulting contract was predetermined without his input.

As defendant and Marijuana Company 3 entered into a contract in August 2017 and defendant received a total of $24,500 Marijuana Company 3 and Person 17 that month, defendant started passing cash to Pacheco in exchange for Pacheco's vote and influence in getting Marijuana Company 3's permit approved.

In Fall 2017, Marijuana Company 3 appeared on a draft agenda of the regular City Council meeting, but when the final agenda posted, Marijuana Company 3 was no longer listed on it.  Around this same time, defendant learned from Marijuana Company 3's representatives that Person 10, then a Compton City Councilmember, had a friend who was upset that Marijuana Company 3 had not hired the friend to represent Marijuana Company 3 in its pursuit of a marijuana permit in Baldwin Park.  Defendant knew that Person 10 and Person 1 had a relationship and believed Person 1 removed Marijuana Company 3 from the regular City Council agenda at Person 10's request.  Based on his belief that Person 1 served the agenda's gatekeeper, defendant demanded through Pacheco to speak with Person 1.  After the City Council meeting, defendant met with Pacheco and Person 1 and told them that Marijuana Company 3 felt extorted.  Neither Pacheco nor Person 1 pushed back at this accusation.  Instead, Person 1 acted with indifference and intimated that it came with came with the

1  territory.   Defendant later learned that Person 15 had brokered a

2  deal between Marijuana Company 3, Person 10, and Person 10's friend,

3  which prompted the renegotiation of defendant's contract with

4  Marijuana Company 3 later that month.

5            3.    The Marijuana Company 4 Permit

6       With respect to the Marijuana Company 4 permit, Person 14 and his

7  company, Consulting Company 3, represented Marijuana Company 4 in its

8  pursuit of a marijuana permit in Baldwin Park.   As a way to

9  compensate defendant and, in turn, Pacheco for securing the marijuana

10 permit for Marijuana Company 4, Person 14 through Consulting Company

11 3 made payments to defendant's Market Share Media Agency of at least

12 $45,000 from approximately August 2017 through February 2018 during

13 which time Marijuana Company 4 sought and received its marijuana

14 permit.   Beyond sending and/or forwarding emails, Market Share Media

15 Agency and defendant did little work for Consulting Company 3 or

16 Marijuana Company 4.   Defendant and Person 14 both understood that

17 Person 14 would do most of the work necessary to help Marijuana

18 Company 4 obtain its marijuana permit in Baldwin Park.   As both

19 defendant and Person 14 knew, the Consulting Company 3 payments to

20 Market Share Media Agency were bribe payments for Pacheco disguised

21 to look like legitimate consulting fees, including through the use of

22 bogus invoices.

23       Defendant's corrupt relationship with Pacheco and Person 14

24 with respect to Marijuana Company 4's permit began in the summer of

25 2017 when Pacheco introduced defendant to Person 14.   Pacheco wanted

26 defendant to "represent" a marijuana permit applicant in Baldwin Park

27 so that Pacheco could receive bribe payments from the applicant

28 funneled to Pacheco through defendant.   At Pacheco's request,

14

defendant went to a meeting at a restaurant in Baldwin Park.   There, defendant first met Person 14, whose company, Consulting Company 3, represented Marijuana Company 4.   Pacheco said that Person 14 was a school board member and the City Manager of Huntington Park.   During the meeting, Pacheco made clear to Person 14 that defendant represented Pacheco and that Person 14 should use defendant's services to secure Marijuana Company 4's marijuana permit.

Following the meeting, Person 14 and defendant entered into a written agreement on or about August 1, 2017.   The party signing for Consulting Company 3 (Person 14's company) was an individual with the initials F.M. -- a man whom defendant had never met and did not know. Pursuant to the agreement, defendant's company was to receive $250,000 over a series of six payments, the majority of which would come after Person 14's/Consulting Company 3's client (Marijuana Company 4) obtained its marijuana permit.

When Person 14 complained to defendant about the amount of money he paid defendant, defendant told him that Pacheco was getting 60 percent of the money Person 14 paid him through Consulting Company 3.   Even after that express acknowledgment of Pacheco's role and receipt of bribe payments, Person 14 continued to pay defendant.

Person 14 subsequently renegotiated Consulting Company 3's contract with Pacheco, not defendant, and included a non-disclosure condition as an addendum.   Person 14 first sent this non-disclosure condition addendum to defendant on or about August 31, 2017 via email and wrote "Per our conversation, here's the 2nd addendum with the non disclosure language . . discretion is a must for us and most appreciated."   That addendum and along with another contractual addendum reducing the amount Consulting Company 3 had to pay

15

defendant's company to $190,000 was signed on or about September 2, 2017 by Person 14, not F.M.   Defendant also signed the contract and addenda.   Later, Person 14 and Pacheco again renegotiated defendant's contract and reduced the cost of the contract to $185,000, $170,000 of which was to be paid after Marijuana Company 4 obtained its marijuana permit.   Both Person 14 and defendant signed this agreement on or about September 26, 2017.

In addition, defendant's Market Share Media Agency also received a no-bid $14,500 contract from the City of Huntington Park signed by Person 14 as its City Manager.   The no-bid contract represented, at least in part, further compensation for defendant in his efforts to secure the marijuana permit for Marijuana Company 4. In violation of the contract's terms, Market Share Media Agency received payment from Huntington Park before completing its services.

Finally, to further secure the Marijuana Company 4 permit, Person 14 gave defendant a $5,000 check made payable to the church associated with the school attended by Pacheco's child.

SENTENCING FACTORS

16.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).   Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crime of conviction.

17. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | [U.S.S.G. § 2C1.1(a)(2)] |
| More Than One Bribe: | +2 | [U.S.S.G. § 2C1.1(b)(1)] |
| Value of Bribe > $150,000: | +10 | [U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(F)] |
| Elected Public Official: | +4 | [U.S.S.G. § 2C1.1(b)(3)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20. Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.    The right to persist in a plea of not guilty.

        b.    The right to a speedy and public trial by jury.

        c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be

represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

21.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 25 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

24.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any

investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### EFFECTIVE DATE OF AGREEMENT

25.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

26.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.   For example, if defendant

knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

27.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION

## & PRETRIAL SERVICES OFFICE NOT PARTIES

28.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court; (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence; and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the sentencing calculations set forth above are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant

23

understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

31.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          32.   The parties agree that this agreement will be considered

3     part of the record of defendant's guilty plea hearing as if the

4     entire agreement had been read into the record of the proceeding.

5     AGREED AND ACCEPTED

6     UNITED STATES ATTORNEY'S OFFICE
      FOR THE CENTRAL DISTRICT OF
7     CALIFORNIA

8     STEPHANIE S. CHRISTENSEN
      Acting United States Attorney

9

10    _____          October 7, 2022
      THOMAS F. RYBARCYK                            _____
11    LINDSEY GREER DOTSON                          Date
      Assistant United States Attorneys

12

13    _____                  8/30/22
      GABRIEL CHAVEZ                                _____
14    Defendant                                     Date

15

16    _____                  8/30/22
      FRANCISCO SUAREZ                              _____
17    Attorney for Defendant                        Date
      GABRIEL CHAVEZ

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        _____
GABRIEL CHAVEZ                          Date 8/30/22
Defendant

26

1

### CERTIFICATION OF DEFENDANT'S ATTORNEY

2    I am GABRIEL CHAVEZ'S attorney.  I have carefully and thoroughly
3  discussed every part of this agreement with my client.  Further, I
4  have fully advised my client of his rights, of possible pretrial
5  motions that might be filed, of possible defenses that might be
6  asserted either prior to or at trial, of the sentencing factors set
7  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
8  provisions, and of the consequences of entering into this agreement.
9  To my knowledge: no promises, inducements, or representations of any
10 kind have been made to my client other than those contained in this
11 agreement; no one has threatened or forced my client in any way to
12 enter into this agreement; my client's decision to enter into this
13 agreement is an informed and voluntary one; and the Factual Basis set
14 forth in this agreement is sufficient to support my client's entry of
15 a guilty plea pursuant to this agreement.

16

17 _____      ___8/30/22_____
   FRANCISCO SUAREZ                          Date
   Attorney for Defendant
18 GABRIEL CHAVEZ

27

# EXHIBIT A

1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [18 U.S.C. § 666(a)(2):
                                        Federal Program Bribery]
13   GABRIEL CHAVEZ,

14            Defendant.

15

16        The Acting United States Attorney charges:

17                  [18 U.S.C. §§ 666(a)(2), 2(a)]

18        At times relevant to this Information:

19   A.   PERSONS AND ENTITIES

20        1.   The City of Baldwin Park, California (the "City") was a

21   local government located within Los Angeles County in the Central

22   District of California.  The City received in excess of $10,000 under

23   federal programs in both 2017 and 2018.

24        2.   The City was governed, in part, by its City Council, which

25   adopted legislation, set policy, adjudicated issues, and established

26   the budget for the City.

27

28

3.    The City Council was comprised of four City Council members and a mayor, all of whom were elected at large by the City's registered voters.

4.    Ricardo Pacheco ("Pacheco") was first elected to the City Council in 1997 and held that elected position until 2020.  He also previously served as the City's Mayor Pro Tempore.  In both roles, Pacheco was an agent of the City.

5.    Defendant GABRIEL CHAVEZ founded Market Share Media Agency, an internet marketing company, in 2012.

B.    THE SCHEME

6.    In or around June 2017, the City started the process of permitting the sale, cultivation, and manufacture of marijuana within the City's limits.  Shortly thereafter, Pacheco decided to corruptly solicit bribe payments from companies seeking marijuana development agreements and related permits ("marijuana permits") in the City.  In exchange for the payments, Pacheco would agree to assist and assist the companies, using his official City position, with obtaining marijuana permits.

7.    Pacheco elected to use an intermediary to funnel the bribe payments to himself in an effort to disguise the true nature of the payments.  The scheme would operate as follows: a company seeking a marijuana permit would pay the intermediary for supposed "consulting" services, the intermediary would then split a portion of the money with Pacheco, and Pacheco would then vote in favor of the company's desired marijuana permit in exchange for the payment.  Pacheco would also agree to use his influence as a City Council member to ensure that other members of the City Council voted in favor of the marijuana permit as well.

8.    Defendant CHAVEZ was asked by Pacheco to act as an intermediary to funnel bribes to Pacheco, and defendant CHAVEZ agreed.

9.    To help conceal the bribery scheme, defendant CHAVEZ obtained a template for a sham consulting agreement from Person 1, which defendant CHAVEZ thereafter used to facilitate and disguise the scheme.

10.    Defendant CHAVEZ used his company, Market Share Media Agency, to funnel bribe payments to Pacheco in exchange for Pacheco's votes and influence over the City's permitting process to secure marijuana permits for two companies, Marijuana Company 3 and Marijuana Company 4.

11.    Defendant CHAVEZ obtained bribe payments to pass to Pacheco from Person 14, who was helping Marijuana Company 4 obtain its marijuana permit.  To conceal the true nature of the payments, the bribes defendant CHAVEZ accepted were disguised as consulting payments from Person 14's consulting company to defendant CHAVEZ's company, Market Share Media Agency.  Defendant CHAVEZ kept the remainder of the payments not provided to Pacheco in exchange for defendant CHAVEZ's services as an intermediary for the bribe payments.

///
///
///

3

1    C.    THE BRIBERY

2         12.   Beginning in or around August 2017 and continuing to in or

3    around March 2018, in Los Angeles County, within the Central District

4    of California, defendant CHAVEZ, aiding and abetting Pacheco, Person

5    14, and others, demanded, accepted, and agreed to accept things of

6    value, namely, at least $125,000 from Marijuana Company 3 and at

7    least $45,000 from Person 14 through Person 14's consulting company,

8    intending to influence and reward Pacheco, an agent of the City of

9    Baldwin Park, in connection with a business, transaction, and series

10   of transactions of the City having a value of $5,000 or more,

11   specifically, the City's approval and awarding of marijuana

12   development agreements and related permits.

13

14                                   STEPHANIE S. CHRISTENSEN
                                     Acting United States Attorney
15

16

17                                   SCOTT M. GARRINGER
                                     Assistant United States Attorney
18                                   Chief, Criminal Division

19                                   MACK E. JENKINS
                                     Assistant United States Attorney
20                                   Chief, Public Corruption and
                                     Civil Rights Section
21
                                     THOMAS F. RYBARCZYK
22                                   Assistant United States Attorney
                                     Public Corruption and Civil
23                                   Rights Section

24                                   LINDSEY GREER DOTSON
                                     Assistant United States Attorney
25                                   Deputy Chief, Public Corruption
                                     and Civil Rights Section
26

27

28

                                     4